[No. 37353-0-II.   Division Two.   April 7, 2009.]

AOL, LLC, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

---

534

536

*Gregg D. Barton* and *Scott M. Edwards* (of *Perkins Coie, LLP*), for appellant.

*Robert M. McKenna, Attorney General*, and *Heidi A. Irvin* and *Peter B. Gonick, Assistants*, for respondent.

¶1 HUNT, J. — AOL, LLC, appeals the Thurston County Superior Court's dismissal of its excise tax refund lawsuit against the Washington Department of Revenue (Department), based on the trial court's ruling that AOL had failed to pay "[a]ll taxes, penalties, and interest [before instituting legal action] to contest all or any part of such taxes, penalties, or interest" as required by RCW 82.32.150. AOL argues that the trial court erred by dismissing its refund lawsuit because (1) AOL filed an amended return for January 2000; (2) AOL paid all "taxes, penalties, and interest" that were due with respect to the amended January 2000 return; (3) AOL appealed only the taxes related to the amended January 2000 return, not the four-year assessment covering the period from January 1, 1998, to December 31, 2001; and (4) therefore, it paid "[a]ll taxes, penalties, and interest" as required by RCW 82.32.150 before filing its lawsuit against the Department. The Department counters that (1) in order to challenge any part of the tax assessment in court, RCW 82.32.150 required AOL to pay the entire assessment; and (2) AOL cannot avoid paying the entire assessment by filing an amended return for one month in that period and then purporting to challenge only that month's assessment. Holding that where the Department has assessed additional taxes, penalties, or interest against a taxpayer for a given period, RCW 82.32.150 requires the taxpayer to pay the entire sum assessed before seeking a tax refund in superior court for any partial period within the assessment period, we affirm.

## FACTS

### I. AUDIT AND ASSESSMENT

¶2 AOL, LLC, is the successor to America Online, Inc. Between January 1, 1998, and March 31, 2006, AOL provided Internet services to customers around the world,

including customers in Washington.[1] AOL contracted with third party network service providers for end-to-end network service, commonly called "managed modem service."[2]

¶3 In 2006, the Department audited AOL for the period from January 1, 1998, to December 31, 2001, thus including the month of January 2000. On September 18, 2006, the Department assessed against AOL: $13,870,886 in unpaid taxes, $693,544 in penalties, and $4,571,540 in interest for the January 1, 1998 to December 31, 2001 audit period, for a total due of $19,135,970 (the four-year assessment).[3] The Department also issued AOL a second assessment for the period from January 1, 2002, to March 31, 2006, in the amount of $27,059,447.[4]

## II. ADMINISTRATIVE APPEAL

¶4 On December 15, 2006, AOL petitioned the Department "to correct" both assessments. AOL argued that it was entitled to relief because (1) the Department had miscalculated the business and occupation tax it assessed on AOL's revenues from "unreported access fees"; (2) the Department erred in assessing retail sales taxes against AOL on its purchases of managed modem service from network service

---

[1] During this time period, AOL was a Delaware corporation with its principal place of business in the Commonwealth of Virginia.

[2] "Managed modem service" includes (1) providing an access modem, which answers a telephone call placed by an AOL member's modem-equipped personal computer and translates the telephone call's analog signal into a digital signal; (2) providing computer processing applications that change information protocol; (3) providing added or restructured information; and (4) permitting interaction with stored information through the Internet or a proprietary subscriber network. "Managed modem service" is also called "dial-up access" or "network" services.

[3] This four-year assessment lists the dollar amounts and states that these amounts are "detailed in the audit report by Margaret Nabakoza." This audit report, however, is not part of the record in this appeal. Nevertheless, the parties agree that the tax primarily related to AOL's purchase of managed modem service from network service providers in Washington State.

[4] The January 1, 2002, to March 31, 2006, assessment is not included in the record on this appeal. Although it is unclear from the record exactly when the Department issued this second assessment, apparently it was issued before December 15, 2006.

providers; (3) AOL had paid retail sales tax on its leased modems; and (4) the Department's assessment for the period from January 1, 2002, through March 31, 2006, was invalid because it was based on an estimate rather than on examination of actual books, records, and financial figures for that period.

¶5 On November 28, 2007, the Department's Appeals Division held a hearing with AOL's representatives. As of June 16, 2008, when the Department filed its brief in this appeal, AOL's administrative appeal was still pending.[5]

### III. Amended Return and Refund Suit in Thurston County Superior Court

¶6 On June 18, 2007, AOL apparently[6] filed an amended excise tax return for the period from January 1, 2000, to January 31, 2000. In that amended return, AOL reported $241,408.15 of unpaid retail sales tax for managed modem services for that period. On September 20, 2007, AOL remitted $331,377.33 to the Department to satisfy its January 2000 sales tax liability plus $89,969.18 in "statutory interest."[7] The next month, on October 30, 2007, AOL filed an amended complaint in Thurston County Superior Court for a refund of its recently remitted January 2000 tax.[8]

¶7 The Department moved to dismiss AOL's January 2000 tax refund action without prejudice or, in the alterna-

---

[5] As of the date of this opinion, we have no further information on the status of AOL's administrative appeal.

[6] This amended return is not part of the record on appeal. When we ordered AOL to supplement the record with its amended January 2000 return, AOL responded that its amended January 2000 tax return was not part of the record before the trial court.

[7] Presumably, AOL means that it paid interest according to RCW 82.32.050, which provides varying rates of interest for late payments, depending on when the Department receives payment from the taxpayer.

[8] AOL filed its original complaint on October 23, 2007, erroneously referencing January 2002 instead of January 2000. AOL corrected this error in the amended complaint.

tive, to stay the superior court proceedings pending completion of AOL's administrative appeal. The Department argued that this relief was necessary because (1) AOL had not paid all taxes, penalties, and interest in full before filing its tax refund action, as RCW 82.32.150 requires; (2) in spite of AOL's purported tender of taxes for January 2000, the Department had not actually received the taxes AOL owed for January 2000 because RCW 82.32.080 requires the Department to apply a taxpayer's payments first to penalties and interest and then to the tax, without regard to the taxpayer's instructions about how to apply the payments; (3) even if the superior court found that AOL had paid the tax amounts owed for January 2000, AOL still did not meet the statutory requirements because RCW 82.32.150 requires a taxpayer to pay the full assessment in order to challenge a tax period within that assessment; (4) the Department had primary jurisdiction over the issues in the case; and (5) a stay of the superior court proceedings was in the "interest of justice." AOL and the Department agreed to defer the issue of whether AOL had actually paid the tax, interest, and penalties due in connection with its January 2000 return until discovery, which had not yet occurred.[9]

¶8 After reviewing the parties' written submissions and hearing argument from counsel, the superior court granted the Department's motion to dismiss AOL's tax refund action without prejudice because AOL had "failed to meet the [RCW 82.32.150] statutory requirements for bringing a tax refund action in Superior Court." Clerk's Papers at 436.

¶9 AOL appeals.[10]

---

[9] Whether AOL has actually paid the amounts due for the January 2000 amended return is, therefore, not an issue on appeal.

[10] Our court clerk placed this matter on the commissioner's motion calendar to determine appealability. Our commissioner concluded that the trial court's order dismissing AOL's action without prejudice is appealable under RAP 2.2(a)(3) because the order in effect determined the action, even though the dismissal was without prejudice. Commissioner's Letter Ruling, *AOL, LLC v. Dep't of Revenue*, No. 37353-0-II (Wash. Ct. App. Mar. 21, 2008). We received no motion to modify the commissioner's ruling.

## ANALYSIS

¶10 We must decide whether the trial court erred by dismissing AOL's one-month tax refund lawsuit for failing to comply with RCW 82.32.150's requirement that AOL pay all taxes, penalties, and interest for the entire four-year assessment period before commencing its refund action in court. We hold that the trial court did not err.

¶11 AOL argues that the superior court erred by dismissing its refund lawsuit for failing to pay the entire four-year assessment covering the period from January 1, 1998, to December 31, 2001, because (1) it (AOL) appealed only the January 2000 taxes and interest, not the four-year assessment, and (2) it has paid "[a]ll taxes, penalties, and interest" due for January 2000. Specifically, AOL argues that (1) the plain language of RCW 82.32.150 requires it to pay only the taxes, penalties, and interest for the period it is contesting—January 2000; (2) the Department's assertion that AOL must pay the entire four-year assessment is contrary to both the statute and the Department's own practice; (3) adopting the Department's position would lead to absurd results; and (4) the taxes, penalties, and interest on the rest of the four-year assessment are not yet "due" and may never become due depending on the outcome of AOL's simultaneous administrative appeal, which is still pending. In the alternative, AOL argues that it has to meet only the "spirit of the statutory procedural requirements" and it has done so. AOL's arguments fail.

### I. Standard of Review

¶12 Where facts are not at issue, we review de novo a trial court's ruling on a motion to dismiss. *Singleton v. Naegeli Reporting Corp.*, 142 Wn. App. 598, 606, 175 P.3d 594 (2008). We review questions of law, including statutory construction, de novo. *City of Pasco v. Pub. Employment*

*Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992). Where statutory language is plain and unambiguous, we do not interpret the statute; rather, we determine legislative intent from the statutory language itself, regardless of contrary interpretation by an administrative agency. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005).

¶13 When a statute is ambiguous, we resort to principles of statutory construction, legislative history, and relevant case law to assist in interpretation. *Yousoufian v. King County Executive*, 152 Wn.2d 421, 434, 98 P.3d 463 (2004) (quoting *State v. Watson*, 146 Wn.2d 947, 955, 51 P.3d 66 (2002)). A statute is ambiguous if it can reasonably be interpreted more than one way. *Id.* (quoting *Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)).

¶14 We must construe statutes to give effect to all of the language and to render no portion meaningless or superfluous. *Lakemont Ridge Homeowners Ass'n v. Lakemont Ridge Ltd. P'ship*, 156 Wn.2d 696, 699, 131 P.3d 905 (2006). Where a general statute includes the same matter as a specific statute and the two cannot be harmonized, the specific statute will prevail over the general. *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008).

## II. Statutory Scheme for Reporting, Assessing, and Contesting Excise Taxes

¶15 Chapter 82.08 RCW governs retail sales taxes. Chapter 82.32 RCW[11] contains general administrative pro-

---

[11] Since the beginning of the audit period at issue here, the legislature has amended several of the sections discussed below, but these amendments do not affect the current analysis. *See* Laws of 2008, ch. 181, § 501; Laws of 2007, ch. 111, §§ 106, 110; Laws of 2006, ch. 256, §§ 1, 6; Laws of 2003, 1st Spec. Sess., ch. 13, §§ 8, 13; Laws of 2003, ch. 73, § 1; Laws of 2000, ch. 229, § 7; Laws of 1999, ch. 277, § 11. Thus, we refer to the current version of each statute.

visions for implementing the taxes imposed by chapter 82.08 RCW. RCW 82.32.045(1) provides:

> Except as otherwise provided in this chapter, payments of the taxes imposed under chapter[ ] . . . 82.08 RCW, . . . along with reports and returns on forms prescribed by the department, are due monthly within twenty-five days after the end of the month in which the taxable activities occur.

Chapter 82.32 RCW does not cover amended returns; nevertheless, amended returns appear to be allowed in some circumstances. *See* WASH. STATE DEP'T OF REVENUE, 2008 BUSINESS TAX GUIDE 7 (providing procedure for correcting a previously filed return), *available at* http://dor.wa.gov/Docs/Pubs/Excise Tax/FilTaxReturn/BusTaxGuide08.pdf.

¶16 If the Department determines that the taxpayer has paid less tax than the amount due, then

> the department shall assess against the taxpayer such additional amount found to be due and shall add thereto interest on the tax only. . . . [T]he additional amount shall become due and shall be paid within thirty days from the date of the notice [of the assessment], or within such further time as the department may provide.

RCW 82.32.050(1). If a taxpayer fails to pay the proper amount on time, the Department will also assess interest under RCW 82.32.050 and penalties under RCW 82.32.090.

¶17 Chapter 82.32 RCW provides two different options for a taxpayer to contest imposition of an excise tax, including a retail sales tax under chapter 82.08 RCW. First, under RCW 82.32.160, if the Department issues a taxpayer a notice of additional assessed taxes, interest, and penalties, the taxpayer may petition the Department to correct the assessment if the taxpayer believes it erroneous; this statute does not require the taxpayer to prepay the contested taxes. If the taxpayer does not file a petition within 30 days of receiving the notice of assessment, "the assessment covered by the notice shall become final." RCW 82.32.160.

¶18 Second, under RCW 82.32.180, a taxpayer, *"having paid any tax as required* and feeling aggrieved by the amount of the tax," may appeal to the Thurston County Superior Court for a refund. (Emphasis added.) A taxpayer need not exhaust administrative remedies before filing such a refund lawsuit. RCW 82.32.180.[12] But the taxpayer must first pay in full all taxes, penalties, and interest: RCW 82.32.150 requires the taxpayer to pay "[a]ll taxes, penalties, and interest . . . in full before [instituting an action] in any court to contest all or any part of such taxes, penalties, or interest."[13] Thus, the taxpayer may choose either to file an administrative appeal without first paying the contested taxes, penalties, and interest, or to pay the contested taxes, penalties, and interest in full and then seek a refund in superior court.

¶19 Moreover, chapter 82.32 RCW does not expressly prohibit a taxpayer from seeking administrative and court review simultaneously.[14] As best we can discern from the record before us and the parties' representations at oral argument, AOL has elected to pursue both options: (1) Independent of this appeal, AOL is challenging the full four-year assessment administratively, without having to prepay the contested amounts; and (2) AOL filed an action in superior court seeking refund of its payment of only the

---

[12] *See also Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 371, 166 P.3d 667 (2007) (party not required to exhaust administrative remedies where statute grants original jurisdiction to superior court and party seeks to invoke original, rather than appellate, jurisdiction of court).

[13] *See Kirkland v. Dep't of Revenue*, 45 Wn. App. 720, 727 P.2d 254 (1986) (reversing superior court's denial of summary judgment where taxpayer did not pay entire assessment before filing for refund); *see also HomeStreet, Inc. v. Dep't of Revenue*, 139 Wn. App. 827, 162 P.3d 458 (2007) (allowing taxpayer refund action where taxpayer filed return and paid taxes for one month, which month was not included in a previous Department assessment of additional taxes, penalties, and interest).

[14] The Department does not argue that AOL may not simultaneously seek administrative review and file a judicial appeal. Rather, the Department argues only that the pending administrative action does not prevent the assessed taxes, penalties, and interest from becoming final and due for purposes of the instant court action.

January 2000 assessment, without first paying the full four-year assessment.

### III. Taxpayer Must Pay All Assessed Taxes, Penalties, and Interest Before Challenging Portion in Superior Court

¶20 AOL argues that the plain language of RCW 82.32-.150 requires it to pay the taxes, penalties, and interest due in connection with only its amended January 2000 return because it contested only that one month's taxes in its refund action against the Department in superior court. The Department counters that, because January 2000 is a part of the four-year assessment, RCW 82.32.150 required AOL to pay all taxes, penalties, and interest assessed for that four-year period before it could seek a refund in superior court for the taxes and interest AOL paid in connection with its amended January 2000 return. The Department is correct.

### A. Payment of Entire Assessment, First Sentence of RCW 82.32.150

¶21 The first sentence of RCW 82.32.150 provides: "All taxes, penalties, and interest shall be paid in full before any action may be instituted in any court to contest all *or any part* of such taxes, penalties, or interest." (Emphasis added.) AOL argues that there is only one reasonable interpretation of RCW 82.32.150—that the statute does not require AOL to pay the entire four-year assessment because "[t]he only relief sought by AOL in this suit is a refund of the sales tax AOL paid with its January 2000 return." Br. of Appellant at 5. This argument fails under the plain language of the legislature's statutory scheme.

¶22 In making this argument, AOL completely ignores two important facts: First, January 2000 is "part" of the Department's four-year assessment, which AOL is currently contesting administratively. Second, AOL did not file its amended return for January 2000 until after the De-

partment issued the four-year assessment.[15] Regardless of how AOL characterizes its superior court appeal, AOL is contesting a "part" of the taxes, penalties, and interest that the Department assessed for the four-year period from January 1, 1998, to December 31, 2001. We hold that, under the plain language of the first sentence of RCW 82.32.150, AOL was required to pay the entire four-year assessment before instituting a court action "to contest all *or any part* of such taxes, penalties, or interest" that the Department assessed in the four-year assessment, which four-year assessment includes the January 2000 "part."

### B. Meaning of "Assessment" in Second Sentence of RCW 82.32.150

¶23 AOL also contends that because the legislature used the term "assessment" in the second sentence of RCW 82.32.150, but not in the first sentence, this statute does not require it (AOL) to pay the entire four-year assessment before bringing an action in superior court for refund of its January 2000 taxes. We disagree.

¶24 The second sentence of RCW 82.32.150 provides:

No restraining order or injunction shall be granted or issued by any court or judge to restrain or enjoin the collection of any tax or penalty or any part thereof, except upon the ground that the assessment thereof was in violation of the Constitution of the United States or that of the state.

In contrast to the first sentence of RCW 82.32.150, the second sentence addresses a different set of circumstances: The second sentence generally prohibits a court from issuing restraining orders or injunctions against the Depart-

---

[15] As AOL conceded at oral argument, its one-month-tax-refund action in superior court and its administrative appeal present the same issue. Thus, it appears that AOL filed an amended return and paid contested taxes for only January 2000 in order to challenge taxes for the entire four-year audit period without first paying the required full $19,135,970 assessment. If successful in obtaining a court ruling on the validity of that single month's tax, AOL might then have argued that such ruling was, in effect, a declaratory ruling, binding on the entire four-year assessment at issue in its pending administrative appeal.

ment's collection of a tax or penalty. This statutory prohibition complements the first sentence's requirement that a taxpayer seeking judicial relief must first pay all taxes, penalties, and interest assessed. In other words, generally a taxpayer cannot ask the superior court to enjoin the Department's collection of taxes, penalties, and interest.

¶25 Only in the second half of the second sentence does RCW 82.32.150 use the term "assessment"—the proviso, in which the legislature carves out an exception for unconstitutional assessments. Thus, this part of the statute's second sentence appears to allow a taxpayer to seek a judicial injunction against the Department's collection of any tax or penalty solely on grounds that such "assessment" is unconstitutional, RCW 82.32.150. Then, and only then, does the legislature allow a taxpayer access to the courts without first paying the full assessed taxes, penalties, and interest, which the first sentence otherwise requires.[16]

¶26 The difference in terminology between the first and second sentences is logical: There is no reason for a court to enjoin the Department's collection of a tax that the taxpayer has already voluntarily paid. But a taxpayer may need a court-ordered refund, whether the taxpayer paid the tax voluntarily in connection with a tax return or after the Department assessed additional taxes, penalties, and interest.

## C. Legislature's Widespread Use of Term "Assessment" in Chapter 82.32 RCW

¶27 Requiring a taxpayer to pay the entire assessment for a given period, rather than the taxes for only a single month, a mere portion of the assessment, is consistent with the legislature's statutory scheme. Under chapter 82.32 RCW, interest and penalties arise only when the Depart-

---

[16] Nevertheless, even where the taxpayer raises a substantial constitutional issue, the taxpayer must also meet the equitable criteria governing injunctive relief before a court may grant an injunction under RCW 82.32.150. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 791, 638 P.2d 1213 (1982).

ment "assesses" or "imposes" them.[17] RCW 82.32.050(1) provides that if the taxpayer does not timely file a return and pay the required tax, or if the taxpayer pays less than is due, *"the department shall assess* against the taxpayer such additional amount found to be due *and shall add thereto interest* on the tax only." (Emphasis added.) Similarly, RCW 82.32.090 requires "assess[ment]" of penalties for late payments and substantial underpayments. RCW 82.32.090(1), (2). There are no provisions in chapter 82.32 RCW that instruct a taxpayer how to calculate the interest and penalties for a tardy return independent of the Department's assessment of additional taxes, penalties, and interest. Thus, if a taxpayer is contesting interest, as AOL is doing here, the taxpayer is contesting a "part" of an "assessment."[18]

¶28 Furthermore, under RCW 82.32.045(1), taxes and returns are due on a monthly basis "[e]xcept as otherwise provided" in chapter 82.32 RCW. Instead of monthly payments, for example, RCW 82.32.050(1) substitutes a different payment schedule where the Department has "assessed" additional unpaid taxes and penalties against a taxpayer. Read together, RCW 82.32.045(1) and RCW 82.32.050(1) thus prevent a taxpayer from doing what AOL attempted to do here—filing a tax return and paying the tax for a single month where the Department has already assessed additional taxes, interest, and penalties for a much

---

[17] The Department may "impose" penalties where a taxpayer fails to comply with requirements other than filing tax returns. *See* RCW 82.32.033 (providing that Department shall "impose" penalties on promoters of special events who fail *to comply with record keeping, provision, or verification requirements*).

[18] We note that the legislature frequently uses the term "assessment" in conjunction with "taxes, penalties, or interest" or variations of that phrase. *See* RCW 82.32.050(3) (Department "may extend the due date of any assessment or correction of an assessment for additional taxes, penalties, or interest"), (4) (Department may not make "assessment or correction of an assessment for additional taxes, penalties, or interest" more than four years after close of tax year), .060(1) (discussing credits and refunds where Department determines "within the statutory period for assessment of taxes, penalties, or interest" that taxpayer has overpaid any amount), .160 (providing *administrative appeal where Department has issued taxpayer notice of* "additional taxes, delinquent taxes, interest, or penalties assessed").

longer period.[19] In other words, RCW 82.32.045(1)'s general monthly tax due date is superseded by RCW 82.32.050(1)'s specific directive that "additional amount[s]" the taxpayer owes "shall become due and shall be paid within thirty days from the date of the notice [of assessment], or within such further time as the department may provide."[20]

## D. Department Must Apply Payments First to Penalties and Interest Taxpayer Owes

¶29 The parties have agreed to defer the issue of whether AOL actually paid the amounts due for January 2000 when it tendered what it computed to be its January 2000 taxes with its return. Therefore, we do not directly address this issue here except to the extent necessary to clarify the statutory language in question.[21] As the Department asserts,[22] chapter 82.32 RCW makes it impossible for AOL to pay its January 2000 taxes without paying substan-

---

[19] Our reading of the these statutes comports with two well-settled principles of statutory construction: (1) Read related statutes together to harmonize provisions and to give meaning to all language insofar as possible, *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999); and (2) specific statutes prevail over general statutes. *Residents Opposed to Kittitas Turbines*, 165 Wn.2d at 309.

[20] Chapter 82.32 RCW contains several provisions supporting the Department's interpretation of RCW 82.32.150. RCW 82.32.100(2) covers Department assessments where the taxpayer has failed to keep adequate records; in this statute, the legislature uses the term "assessment" interchangeably with the phrase "such tax, penalties and interest":

> [The Department] shall proceed to determine and *assess* against such person *the tax and any applicable penalties or interest due,* but such action shall not deprive such person from appealing the *assessment* as provided in this chapter. The department shall notify the taxpayer . . . of the total amount of *such tax, penalties, and interest,* and the total amount shall become due and shall be paid within thirty days from the date of such notice.

(Emphasis added.) *See also supra* note 19.

[21] Although we do not decide whether AOL has paid all amounts due in connection with its January 2000 return, the conflict between RCW 82.32.080(5) and AOL's position reinforces our holding that the plain language of RCW 82.32.150 required AOL to pay the entire four-year assessment before seeking a court-ordered tax refund for a single month within the assessment period.

[22] Br. of Resp't at 16 n.7.

tially more than the amount due for January 2000 alone: RCW 82.32.080(5) directs the Department to apply a taxpayer's payments "first against penalties and interest and then upon the tax, without regard to any direction of the taxpayer."

¶30 Thus, when AOL paid the Department $331,377.33 for what it considered to be taxes due with its amended January 2000 return, under RCW 82.32.080(5), that payment went first toward satisfying the Department's previously assessed $5,265,084 in penalties and interest. And in spite of AOL's assertion that it had thereby paid its January 2000 taxes before seeking a refund in superior court, in actuality, the Department could not and did not apply this payment as AOL directed, consistent with the legislature's directive in RCW 82.32.080(5).

## E. Department's Position Not Contrary to Statute or Practice, Does Not Lead to Absurd Results

### 1. Not contrary to practice

¶31 Citing three sources, AOL contends that the Department's position that AOL must pay the entire assessment before seeking a refund of the January 2000 payments was contrary to the Department's own practices. But, as the Department points out, none of these sources actually support AOL's contention.

¶32 First, AOL cites *Agrilink*, 153 Wn.2d 392, for the proposition that (1) Agrilink "administratively appealed two assessments" and also filed a lawsuit seeking a tax refund for a six-month period; and (2) the Department "never asserted that the pending administrative appeal of those assessments precluded *Agrilink* [sic] from seeking a refund of taxes paid with its tax returns." Br. of Appellant at 9. Contrary to AOL's assertion, the facts of *Agrilink* do not indicate that there were two assessments, much less that an administrative appeal was pending when Agrilink filed its refund action in superior court. Furthermore, the

pivotal issue in *Agrilink* was not the issue we confront here.[23]

¶33 Second, AOL cites *HomeStreet*, 139 Wn. App. 827, correctly noting, "[T]he taxpayers reported and paid the contested taxes for a one month period and sought a refund of only that one month period without objection from the Department." Br. of Appellant at 9. Although the Department had previously assessed unpaid taxes against HomeStreet, HomeStreet and the Department had "entered into a 'closing agreement' settling the assessment" but not precluding HomeStreet from disputing the same issue in later reporting periods. *HomeStreet*, 139 Wn. App. at 835 n.17. Thereafter, HomeStreet reported and paid the tax for January 2003—a month not covered by that earlier assessment. Then HomeStreet filed a refund lawsuit in superior court. *Id.* at 835.

¶34 Here, in contrast, AOL is contesting a month that is part of the four-year assessment, not two separate and independent periods. Thus, *HomeStreet* is not inconsistent with the Department's position here that AOL must pay the entire four-year assessment, rather than only the taxes and penalties due in connection with one month within that four-year assessment.

¶35 Third, AOL asserts:

> The record contains other examples where Washington taxpayers have sued for a refund of taxes in Superior Court while owing other taxes (that were not the subject of the Superior Court proceedings) without the Department asserting that those other taxes were required to be paid before the taxpayers could seek a refund of the taxes sought to be refunded.

Br. of Appellant at 9. The "examples" in the record to which AOL refers include (1) a notice of appeal that Sprint

---

[23] In 1991, the *Agrilink* taxpayer requested the Department to reclassify its product, which would result in a lower level of taxation; that dispute was settled in 1997. 153 Wn.2d at 394-95. In 1999, the Department advised that Agrilink would be taxed at the general manufacturing rate; Agrilink paid the tax at this rate "from June to December 1999 but filed a refund request," which led to the published case. *Id.*

International Communications Corporation filed on December 29, 2005, in Thurston County Superior Court, seeking refund of amounts it paid after the Department assessed taxes against it for the period from January 1, 1989, to December 31, 1993; and (2) a notice of appeal that Sprint filed on August 2, 2005, with the Board of Tax Appeals, following Sprint's administrative appeal to the Department of an assessment covering the period from January 1, 1994, through December 31, 1997. This argument fails because Sprint prepared these appeal notices; thus, the notices reflect Sprint's position, not the Department's.

¶36 But, even assuming that these documents reflect the Department's position with respect to Sprint, that position would not be contrary to the one the Department asserts here—that AOL must first pay its entire four-year assessment before seeking a court-ordered refund of any taxes paid for a period that is part of this four-year period. Sprint's concurrent judicial and administrative appeals covered separate assessments relating to two separate time periods, not overlapping periods as is the case here.

## 2. No absurd results

¶37 AOL next argues that the Department's interpretation of the legislature's statutory scheme would lead to absurd results because it could require the payment of federal or other unrelated taxes or taxes that are not yet due. AOL misconstrues the Department's position. The Department asserts that where a given tax period is included in a larger time period for which the Department has issued an assessment, the taxpayer must pay the entire assessment before it can challenge a portion of the assessment and seek a refund of a portion of the taxes in superior court.

¶38 We adhere to the well-settled principle of statutory construction that we should construe the law to avoid absurd results. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d

318 (2003). Here, however, we need not construe the statute at issue because, as we note above, its plain language is clear on its face. Nonetheless, neither the Department's interpretation nor our reading of the legislature's statutory scheme lead to absurd results.

### 3. No conflict in statutory scheme

¶39 AOL further argues that interpreting RCW 82.32-.150 to require it to pay the entire assessment before filing its refund suit is inconsistent with RCW. 82.32.160. But, as the Department asserts, any inconsistency here is caused by AOL's simultaneously seeking two different types of review—administrative and judicial. A taxpayer can appeal administratively without first paying the tax, or it can pay the tax and seek a refund in Thurston County Superior Court. Here, although AOL chose to pursue both remedies simultaneously, in pursuing judicial review, it did not comply with RCW 82.32.150. Thus, AOL was unsuccessful in pursuing its judicial remedy because it failed to pay the entire assessment for the four-year period before seeking a refund of taxes for a one-month portion of that four-year assessment period.

¶40 In essence, AOL argues that (1) an administrative appeal under RCW 82.32.160 prevents the Department's previous assessment from becoming "final"; (2) thus, the taxes, penalties, and interest included in the four-year assessment are not yet due; (3) therefore, RCW 82.32.150 does not require AOL to pay the four-year assessment before seeking judicial review of any or all of the four-year assessment;[24] (4) furthermore, the taxes, penalties, and interest that the Department assessed against AOL may never become due, depending on the outcome of its administrative appeal. These arguments also fail.

[24] RCW 82.32.160 provides the procedure for a taxpayer to appeal an assessment administratively. Under this statute, an assessment thus becomes "final" 30 days after the Department issues a notice of assessment if the taxpayer does not petition the Department for review within that 30-day window.

¶41 Taxes are presumed to be just and legal, and the burden is on the taxpayer to prove that the tax is incorrect. *Ford Motor Co. v. City of Seattle, Executive Servs. Dep't*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007). Thus, the purpose of both a tax-refund lawsuit in superior court and an administrative appeal of an assessment is the same—to determine whether the taxpayer actually owes the stated tax, interest, or penalties. Only the processes differ: An administrative appeal under RCW 82.32.160 does not require the taxpayer to pay any taxes, penalties, interest, or any type of assessment as a prerequisite to seeking administrative review of such assessment. In contrast, a tax-refund lawsuit in superior court under RCW 82.32.180 first requires the taxpayer to pay all taxes, penalties, and interest before contesting any of these amounts in superior court; this AOL failed to do.

¶42 Taken to its logical conclusion, AOL's proposed interpretation of the statutory scheme would render RCW 82.32.150 superfluous: Under AOL's "version," a taxpayer could easily and inexpensively circumvent, thereby effectively nullifying, RCW 82.32.150's requirement that a taxpayer pay "[a]ll taxes, penalties, and interest" before bringing a tax-refund suit in court by first petitioning for administrative review of an entire multiyear assessment, thus preventing all assessed taxes, penalties, and interest for such period from becoming "due." But we must construe statutes to give effect to all the language and to render no portion meaningless or superfluous. *Lakemont Ridge Homeowners Ass'n*, 156 Wn.2d at 699. Accordingly, we reject AOL's proposed nullification of RCW 82.32.150's requirement that a taxpayer pay "[a]ll taxes, penalties, and interest" before bringing a tax-refund suit.

IV. SPIRIT OF STATUTORY PROCEDURAL REQUIREMENTS

¶43 AOL argues that "[e]ven if it is assumed *arguendo* that AOL has not satisfied the statutory proce-

dural requirements, AOL has certainly satisfied the spirit of RCW 82.32.150." Br. of Appellant at 3. Specifically, AOL argues that where the constitution vests judicial power in the courts, as it has in article IV, section 6 for tax cases,[25] the legislature may not abrogate that power. But, as the Department notes, AOL's argument ignores a different section of the constitution, namely article II, section 26, which provides: "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state."[26]

¶44 AOL does not explain how it has satisfied the spirit of RCW 82.32.150's procedural requirements by paying only $331,377.33 of a $19,135,970.00 assessment if the legislature intended to require a taxpayer to pay an entire assessment before contesting a part of that assessment in court. Further, we fail to see how this could be so.

¶45 In *James v. Kitsap County*, 154 Wn.2d 574, 588, 115 P.3d 286 (2005), our Supreme Court noted that there is a

> well established rule that where statutes prescribe procedures for the resolution of a particular type of dispute, state courts have required substantial compliance or satisfaction of the spirit of the procedural requirements before they will exercise jurisdiction over the matter.

The court then defined "substantial compliance" as " 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " *Id.* (quoting *In re Habeas Corpus of Santore*, 28 Wn. App. 319, 327, 623 P.2d 702, *review denied*, 95 Wn.2d 1019 (1981)). Here, AOL has failed to show its "actual compliance in respect to the substance essential to every reasonable objective of the statute." *Id.* AOL's argument fails: AOL has satisfied neither the letter nor the spirit of RCW 82.32.150.

¶46 We affirm.

VAN DEREN, C.J., and HOUGHTON, J., concur.

---

[25] WASH. CONST. art. IV, § 6.

[26] WASH. CONST. art. II, § 26.